```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

BNY, CAPITAL FUNDING LLC,      )
                               )
         Appellant,            )
v.                             )     CIVIL ACTION NO. 1:06-296
                               )
                               )
US AIRWAYS, INC.,              )
                               )
         Appellee.             )
```

**MEMORANDUM ORDER**

THIS MATTER is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia. This case concerns Appellant BNY, Capital Funding's ("BNY") objection to Appellee US Airways retaining certain rights agreed to by BNY in a Letter of Intent ("LOI") dated February 27, 2003. The issues before the court are: (1) whether the LOI is an executory contract and thus subject to the prohibition on assumption of contracts to extend financial accommodations under section 365(c)(2) of the United States Bankruptcy Code, (2) whether an alternative definition of "executory" contracts should be applied to the LOI for purposes of section 365(c)(2), and (3) whether the LOI remains an asset of US Airways. The court affirms the Bankruptcy Court's January 24, 2006, Order and holds that the LOI is not an executory contract under the *Countryman* definition applied in the Fourth Circuit and therefore not subject to the prohibition on assumption of contracts to extend financial accommodations under section 365(c)(2). The court

declines to apply an alternative definition of "executory" to the LOI for purposes of section 365(c)(2) because a mixed application of the *Countryman* definition is not suggested by case law in the Fourth Circuit. Furthermore, an alternative meaning of the word "executory" in different subsections of section 365 is not suggested by the text of the statute itself. Finally, the court finds that the LOI remains an asset of the US Airways bankruptcy estate because, as a legal interest of the airline, the LOI re-vested in US Airways under Section 1141(b) of the Bankruptcy Code upon confirmation of US Airways's reorganization plan on September 27, 2005.

## I. BACKGROUND

US Airways filed petitions for reorganization under Chapter 11 of the Bankruptcy Code once in 2002 and then again in 2004. (Appellee's Br. at 3). After emerging from the first reorganization and before filing for the second, US Airways signed a Binding Letter of Intent ("LOI") with BNY. *In re: US Airways, Inc., et al.*, No. 04-13819, slip op. at 2 (Bankr. E.D. Va. 2006). In that letter, the parties agreed that in consideration for US Airways's assumption of two (2) Airbus A320 aircraft leases (the "A320 leases") BNY would provide lease financing for the purchase of up to two (2) new CRJ-200LR or CRJ-700ER regional jet aircraft at US Airways's election and upon US Airways's satisfaction of certain conditions precedent. *Id.* The

2

A320 leases were nonetheless separate agreements from the LOI because performance remains due on these leases independent of the terms of the LOI. The LOI does not specify an outside date by which US Airways is required to exercise its option. *In Re US Airways, Inc., et al*, No. 04-13819, slip op. at 2.

Less than twenty (20) months after BNY and US Airways signed the LOI, US Airways commenced a second Chapter 11 bankruptcy proceeding on September 12, 2004 (the "Petition Date"). *Id.* at 1. US Airways's reorganization plan in connection with this second bankruptcy became effective on September 27, 2005. *Id.* at 2. As part of this plan, US Airways sought to assume a multitude of agreements pursuant to 365(a) of the Bankruptcy Code. The LOI was included among these agreements. *Id.* at 3.

On November 14, 2005, BNY filed its objection to the inclusion of the LOI among the agreements US Airways sought to assume in bankruptcy. *Id.* BNY argued that the LOI is an executory contract to extend financial accommodations within the meaning of Section 365 (c)(2) of the Bankruptcy Code and therefore cannot be assumed. Section 365(c)(2) provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-
>
> . . .
>
> (2) such contract is to make a loan, or extend other debt financing or financial accommodation, to or for the benefit of the debtor . . . .

3

11 U.S.C. § 365 (c)(2) (West 2004).  US Airways then reviewed the terms and conditions of the LOI and determined that the LOI is not actually an executory contract, and is therefore not subject to section 365 of the Code in any way. The dispositive issue on appeal is whether the LOI is an executory contract.

## II. Discussion

### A. Standard of Review

The court reviews the Bankruptcy Court's conclusions of law *de novo*.  Findings of fact are reviewed for clear error. *Devan v. Phoenix Am. Life Ins. Co.*, 400 F.3d 219, 224 (4th Cir. 2005).  The Bankruptcy Court stated that no facts were in dispute.  *In re US Airways, Inc., et al.* No. 04-13819, slip op. at 1.  The Bankruptcy Court's legal conclusion that the LOI was not an executory contract is appropriate for review.

### B. Analysis

    1. The LOI is not an executory contract under the *Countryman* definition.

The Court affirms the Bankruptcy Court's holding that the LOI is not an executory contract because the LOI is a unilateral option contract requiring no further performance by either party unless US Airways seeks to exercise its

option.  The LOI is thus not executory under the *Countryman* definition applied in the Fourth Circuit.

The *Countryman* test is applied by the Fourth Circuit to determine whether or not a contract is executory. *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984).  The *Countryman* test looks to whether the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.  *Id.; see* Vern Countryman, *Executory Contracts in Bankruptcy Part I*, 57 Minn. L. Rev. 439, 460 (1973).

Applying that test to this case, US Airways had no unperformed obligations under the LOI at the time of the petition.[1]  Any future obligations US Airways may have under the LOI are entirely contingent upon its exercise of the option and are actually conditions precedent that US Airways must satisfy before exercising the option.  Until such time as US Airways seeks to exercise the option, these conditions remain immaterial.  "Unperformed obligations become due if, and only if, the optionee exercises the option . . . .  If

---

[1] The date a bankruptcy petition is filed is the critical time for determining whether a contract is executory. *RCI Tech Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 n.12 (4th Cir. 2004) (citing *In re Columbia Gas Sys., Inc.*, 50 F.3d 233, 240 (3d Cir. 1995).

the option is not exercised, the unperformed obligations never become due and neither party commits a breach." *Bronner v. Chenoweth-Massie P'ship (In re Nat'l Fin. Realty Trust)*, 226 B.R. 586, 589 (Bankr. W.D. Ky. 1998).

BNY argues that US Airways had an existing obligation at the time of the petition. (Appellee's Br. at 11). BNY contends that, at the time of the petition, the condition precedent of not being in default on the two A320 leases was binding on US Airways, whether it exercised the option or not. *Id.* It cites the premise that "contingency of an obligation does not prevent its being executory under § 365." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985). That premise was sound in the context of *Lubrizol* but not in the instant case.

*Lubrizol* involved an executed, non-exclusive technology license agreement under which the court found that both sides had ongoing obligations. *Id.* at 1045. The licensor, RMF, specifically had active, continuing duties to notify the licensee of future licensing of the technology, to make commensurate reductions in the licensee's royalty payments, and to defend against certain suits and indemnification obligations. *Id.* After the execution of the contract, RMF thus had no choice but to stand ready to perform these

duties.  Despite being contingent upon future licensing of the technology and possible future lawsuits, RMF incurred these obligations upon executing the contract.

In contrast, under the LOI, US Airways only agreed to a list of conditions it would need to satisfy if it ever chose to exercise its option.  At the time of petition, US Airways thus retained an option under the LOI to determine whether to seek BNY Capital financing of additional airplane purchases.  RMF had no such choice in *Lubrizol*.  RMF's obligations were binding despite their contingency.  In this case, US Airways had no binding obligations and thus the contract was not executory under the *Countryman* definition.

The contract at issue is an extension of additional financial accommodations, not the A320 leases.  A default by US Airways on the A320 leases only becomes material to the agreement to provide additional financing if US Airways seeks to exercise its option.  Until, and unless, the option is exercised, the A320 leases are independent of the promise to extend additional financial accommodations.  US Airways is expected to perform on those leases regardless of whether or not they exercise the option.

The LOI is an unexercised option because it imposes no unperformed obligations on US Airways.  The conditions of the LOI only become material if US Airways seeks to exercise its option.  As of the petition date, US Airways had not

7

exercised the option. Therefore, the Court affirms the Bankruptcy Court's holding that the LOI is not an executory contract under the *Countryman* definition.

2. The *Countryman* test should be applied to section 365(c)(2).

*I. Precedent*

The court declines to apply an alternative definition of executory in the context of Section 365(c)(2) because such a mixed application of the *Countryman* definition is not suggested by case law. More importantly, an alternative meaning of the word "executory" in different subsections is not suggested by the text of the statute.

*Gloria Manufacturing* established the *Countryman* test as the Fourth Circuit standard for executory contracts in 1984. *Gloria Mfg.*, 734 F.2d at 1022. Since that time, the definition has been applied generally to all types of contracts. *See*, *e.g.*, *Lubrizol*, 756 F.2d at 1045 (involving an executed, non-exclusive technology license agreement); *RCI Tech Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 n.12 (4th Cir. 2004) (involving a non-exclusive computer software licensing agreement). There is nothing in the line of cases applying the *Countryman* test in the Fourth Circuit that suggests that the test should not

apply to section 365(c)(2).

The statute itself is silent on the definition of "executory contracts." 11 U.S.C. § 365. The Supreme Court has found that the legislative history of the statute indicates that Congress intended the term to mean a contract "on which performance is due to some extent on both sides." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 n.6. (1984). US Airways points out that Congress formulated Section 365 years after the *Countryman* test was generally acknowledged to be the leading standard for determining whether a contract was executory. Appellee's Br. at 20. Also, Congress has amended the statute numerous times since 1978 (including specifically Section 365) but has never felt compelled to add any definition of executory. *Id.* Thus, Congress has not expressed dissatisfaction with judicial interpretation of the word to date and has seen no need for further clarification.

Congress also has not indicated that it intended the word "executory" to have alternative meanings in different subsections of the statute. The Supreme Court has indicated that statutes should not be read as a series of unrelated and isolated provisions. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995). Where identical words are used in different parts of the same statute, those words are intended to have the same meaning. *Id.* If Congress

9

intended that a different meaning follow the word "executory" in section 365(c)(2) of the Bankruptcy Code, it likely would have attached that meaning.

There is no precedent for applying an alternative definition of the word "executory" in section 365(c)(2) in this case. The absence of any definition of the word "executory" in the statute suggests that Congress was satisfied with judicial interpretation of the word. In the Fourth Circuit, the *Countryman* test is applied to determine whether a contract is "executory." There is nothing in either Fourth Circuit case law or the text of the statute itself to suggest that the word "executory" should have alternative meanings.

## *II. Congressional Intent*

Applying the *Countryman* test to the LOI does not effect a result contrary to congressional intent in this case. US Airways does not seek to assume the LOI as a debtor, a result Congress sought to avoid through its enactment of section 365(c)(2). Rather, US Airways seeks only to retain a pre-petition option until some later date when its exercise would be possible.

Legislative history of 365(c)(2) indicates that "the section is not designed to permit the trustee to demand new loans or additional transfers of property under . . . [pre-petition] commitments." S. REP. No. 95-989, at 59,

*reprinted in* 1978 U.S.C.A.N. 57587, 5844-45.  The subsection was thus intended to avoid forcing lenders to continue to perform on loans to bankrupt parties.

US Airways agrees that it may not assume the LOI as part of its reorganization under Chapter 11 because the contract is not executory.  US Airways does not presently seek to exercise its option or to receive additional financing from BNY.  It seeks only to preserve its option to do so in the future.  Furthermore, the LOI itself contains a number of conditions precedent related to US Airways's solvency that the airline must satisfy in order to exercise the option.  Thus, additional financing may not be available to US Airways, under the terms of the LOI, until their financial situation improves.

BNY contends that a less onerous definition of "executory" would be more in keeping with congressional intent in section 365(c)(2).  (Appellant's Br. at 20).  It points to the test used in *re Riodizio* where that court held that "a contract is executory if each side must render performance, on account of some existing legal duty or to fulfill a condition to obtain the benefit of the other party's performance." *re Riodizio*, 204 B.R. 417, 424 (Bankr. D.S.D. 1982).  The court in *Riodizio* was not bound by the *Countryman* test because the 2nd Circuit has never expressly adopted it.  *Id.* at 424, n.5.  However, that court did

observe that "an option contract is not executory under the *Countryman* definition," before departing from the definition. *re Riodizio*, 204 B.R. at 422.

*Riodizio* suggests that the standard for executory contracts should be lowered to whether "each party must still give something to get something." *Id.* at 424. It points out that such a standard would rescue option contracts from "legal limbo" where they can neither be assumed nor rejected. *Id.* However, outside the body of contracts to be assumed or rejected is precisely where an unexercised option contract belongs during a bankruptcy proceeding. Such a contract, by its nature, depends on some future action by the parties. It need not be deliberated over during a bankruptcy proceeding where the optionee has yet to express intent or demonstrate ability to exercise its option. This is especially true in the instant case where financial safeguards are built into the option itself.

US Airways does not seek to assume the LOI as part of its reorganization under Chapter 11. Furthermore, it may be unable to exercise its option until it emerges from bankruptcy and improves its credit rating. Thus, determining that the LOI is not "executory" under the *Countryman* definition and therefore not subject to section 365(c)(2) is not at odds with congressional intent.

### 3. The LOI is still an asset of US Airways.

As an unexercised option, the LOI was property of US Airways's bankruptcy estate and re-vested in the re-organized US Airways on the effective date. Bankruptcy Code Section 541(a) provides that the filing of a bankruptcy petition creates an estate that is comprised of, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). The LOI, a legal interest of the debtor, thus became property of the US Airways bankruptcy estate on the petition date.

Upon confirmation of US Airways's reorganization plan, the LOI re-vested in US Airways under Section 1141(b) of the Bankruptcy Code. This section provides that "confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). Therefore, the LOI remains an asset of the airline.

### III. Conclusion

The court affirms the Bankruptcy Court's holding that the LOI is not an executory contract.  Furthermore, the court declines to apply an alternative definition of the term "executory" in the context of Section 365(c)(2).  Therefore, the LOI is an unexercised option, and it remains an asset of US Airways.

Accordingly, it is hereby

ORDERED that the Bankruptcy Court's January 24, 2006, Order is AFFIRMED.

The Clerk is directed to forward a copy of this Order to Counsel.

Entered this __7th__ day of July, 2006.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
07/07/06